# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NOEMI TAPIA REYES** <br> **Plaintiff,** <br> v. <br> **CAROLYN W. COLVIN**, **Acting Commissioner of Social Security,** <br> **Defendant.** | NO. CV 15-9406-KS <br><br> **MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

Noemi Tapia Reyes ("Plaintiff") filed a Complaint on December 4, 2015, seeking review of the denial of her application for a period of disability, disability insurance ("DI"), and supplemental security income ("SSI"). On January 12, 2016, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 13-15.) On September 19, 2016, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No 25.) Plaintiff seeks an order reversing the Commissioner's decision and ordering the payment of benefits or, in the alternative, remanding for further proceedings. (Joint Stip. at 34-35.) The Commissioner requests that the ALJ's decision be

affirmed or, in the alternative, remanded for further proceedings. (*See id.* at 35-37.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On February 14 and 16, 2012, Plaintiff, who was born on May 14, 1961, protectively filed applications for a period of disability, DIB, and SSI.[1] (*See* Administrative Record ("AR") 212, 214.) Plaintiff alleged disability commencing March 23, 2010 due to a neck injury, lower back pain, hand pain, shoulder pain, and pain when sitting. (*Id.* 212, 214, 235.) Plaintiff previously worked as a companion (DOT 309.677-010) and a sorter in a fruit conveyor line (DOT 529.687-186). (*Id.* 64; *see also id.* 236.) After the Commissioner denied Plaintiff's applications initially (AR 137-40) and on reconsideration (*id.* 144-48), Plaintiff requested a hearing (*see id.* 149-50). Administrative Law Judge Mark B. Greenberg ("ALJ") held a hearing on February 10, 2014 (*id.* 49-68). Plaintiff, who was represented by counsel, testified before the ALJ as did vocational expert ("VE") Susan Allison. (*See* AR 52-68.) An interpreter was also present. (*Id.* 51.) On February 21, 2014, the ALJ issued an unfavorable decision, denying Plaintiff's applications for DIB and SSI. (*Id.* 27-44.) On October 5, 2015, the Appeals Council denied Plaintiff's request for review. (*Id.* 1-9.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her March 23, 2010 alleged onset date. (AR 32.) The ALJ further found that Plaintiff had the following severe impairments: degenerative disc disease; degenerative joint disease; depression; somatoform disorder; and plantar fasciitis. (*Id.*) The ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or medically

---

[1] Plaintiff was 50 years old on the application date and thus met the agency's definition of a person closely approaching advanced age. *See* 20 C.F.R. §§ 404.1563(d), 416.963(d).

equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926), and he explained his rationale for finding that Plaintiff's impairments did not meet or equal Listings 12.04 and 12.07. (*Id.* 32-33.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work except she is limited to: "[only] occasional postural activities; no ladders, ropes, or scaffolds; occasional reaching at or above the shoulder on the right; no kneeling or squatting; and limited to unskilled work in a nonpublic habituated setting involving simple repetitive tasks." (*Id.* 34.) The ALJ found that Plaintiff was able to perform her past relevant work as a sorter, fruit conveyor line (DOT 529.687-186). (*Id.* 43.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset date through the date of the ALJ's decision. (*Id.*)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v.*

*Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

Plaintiff alleges that the ALJ failed to properly evaluate and incorporate the opinions of two treating physicians: Thomas Curtis, M.D., board certified psychiatrist; and Richard Scheinberg, M.D., orthopedic surgeon. (Joint Stip. at 4.)

### I. **Applicable Law**

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ

4

cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them"). An ALJ errs when he discounts a treating or examining physician's medical opinion, or a portion thereof, "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *See Garrison*, 759 F.3d at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

The opinion of a treating source is generally entitled to greater weight than the opinion of doctors who do not treat the claimant because treating sources are "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone. *See Garrison*, 759 F.3d at 1012; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Thus, if a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it is entitled to controlling weight. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). If, on the other hand, the Commissioner determines that a treating physician's opinion does not meet this test for controlling weight, the treating physician's opinion is still entitled to deference and may be rejected only if the ALJ articulates "clear and convincing" reasons supported by substantial evidence for doing so. *Id.* at 1160-61; *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Nevertheless, an ALJ does not commit legal error *per se* by according greater weight to the opinion of a nonexamining State agency physician than to the contradictory opinion of a treating physician. *See, e.g.*, *Morgan v. Comm'r of. Soc. Sec. Admin.*, 169 F.3d 595, 600-03 (9th Cir. 1999). Instead, an ALJ may reject the contradicted opinion of a treating physician if the ALJ articulates "specific and legitimate" reasons for doing so and those reasons are supported by substantial evidence in the record. *Garrison*, 759 F.3d at 1012; *Hill v. Astrue*, 698 F.3d 1153, 1159-60 (9th Cir. 2012)*.*

5

## II. ALJ Properly Evaluated And Incorporated The Opinion Of Dr. Curtis.

### A. Findings And Opinions Of Dr. Curtis

In connection with her workers' compensation claim, Plaintiff was evaluated by Dr. Curtis, a board certified psychiatrist, on May 5, 2010, approximately two months after her alleged onset date. (AR 432.) Dr. Curtis and his staff spent the next two and a half years treating Plaintiff for depression. In addition to two and a half years of treatment notes (AR 383-431), the record contains the results of Dr. Curtis' initial evaluation in May 2010, his subsequent findings in October 2010 when he wrote a permanent and stationary report, and his findings and opinion in 2013 when the State Insurance Compensation Fund declined to certify Plaintiff's continued receipt of cognitive behavioral therapy.

#### 1. May 5, 2010 Evaluation

In his initial May 5, 2010 evaluation, Dr. Curtis observed that Plaintiff presented as "initially guarded due to her depression, anxiety, fatigue, and irritability caused by pain and physical disability." (AR 436.) Dr. Curtis reported that Plaintiff demonstrated "diminished cognitive functioning in the clinical interview situation" and was "defective in concentration, attention, and memory." (AR 437.) Dr. Curtis believed that, "most likely," Plaintiff's cognitive deficits were the result of "overwhelmed psychological coping mechanisms." (AR 437.) Dr. Curtis described Plaintiff's psychological test results as "extremely abnormal" because they revealed "abnormality in all of the tests measuring emotional functioning." (AR 437.) She placed in the "severe" range of subjective depression (AR 437) and the "moderate" range of anxiety (AR 438). Dr. Curtis diagnosed Plaintiff with Depressive Disorder NOS with anxiety. (AR 440.) Dr. Curtis opined that "if [Plaintiff] were to attempt to return to work [as a companion] now, her emotional condition would probably soon deteriorate into worsened emotional dysfunction." (AR 441.) Dr. Curtis prescribed:

Wellbutrin, an antidepressant, for depression; Risperdal, an antipsychotic, for emotional control; and ProSom, a sedative, for nighttime sleep. (AR 443.)

### 2. October 21, 2010 Permanent And Stationary Report

On October 21, 2010, Dr. Curtis wrote a permanent and stationary report ("Permanent and Stationary Report") and requested additional psychiatric treatment for Plaintiff. (AR 645.) In that report, Dr. Curtis stated that Plaintiff reported experiencing relief of her symptoms from the psychotropic medications (AR 648) but he described Plaintiff as "remain[ing] symptomatic" (AR 649). Dr. Curtis maintained his diagnosis of Depressive Disorder NOS with anxiety and assessed a GAF score of 52.[2] He described the degree of Plaintiff's permanent emotional impairment as moderate, the degree of her permanent mental and behavioral impairment as "compatible with some but not all useful functioning," and the degree of her overall impairment as "moderate almost marked." (AR 662, 665.) In a separate chart, Dr. Curtis indicated that Plaintiff suffered a moderate impairment in her activities of daily living, social functioning, concentration, persistence, and pace, and adaptation. (AR 663.)

Despite the foregoing, Dr. Curtis "anticipated that [Plaintiff] would be able to tolerate the stresses common to the work environment including maintaining attendance, making decisions, doing scheduling, completing tasks and interacting appropriately with supervisors and peers." (AR 664.) He also opined, however, that "[i]f [Plaintiff] were to attempt to return to [her] normal and regular work situation [*i.e.*, as a companion], her condition would be expected to worsen such that there would be an increase in her level of symptoms that

---

[2] A GAF score of 51 to 60 indicates moderate symptoms or difficulty in social, occupational, or school functioning. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV") 34 (revised 4th ed. 2000). The Commissioner has stated that the GAF scale "does not have a direct correlation to the severity requirements in [the] mental disorders listings," 65 Fed. Reg. 50764, 50764-65 (Aug. 21, 2000), and the most recent edition of the DSM "dropped" the GAF scale. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 16 (5th ed. 2012).

7

would correlate with a higher level of observed emotional impairment." (AR 664.) Dr. Curtis added that he believed "no amount of emotional treatment could reasonably be expected to completely erase the adverse impact and complications of [Plaintiff's] work injuries," (AR 649), but surgery that reduced Plaintiff's physical pain and disability could result in a corresponding improvement in Plaintiff's mental and emotional health (AR 671).

### 3. October 28, 2013 Follow Up Report On The Reinstitution Of Treatment

In April 2013, the State Compensation Insurance Fund discontinued authorization for Plaintiff's mental health treatment with Dr. Curtis, and it subsequently denied Dr. Curtis' requests for authorization to resume cognitive behavioral therapy. (*See* AR 575; *see also e.g.*, *id.* 586, *id.* 592-97, *id.* 598.) On October 28, 2013, Dr. Curtis and a psychologist in his office, William Kaiser, Ph.D., prepared a "Follow Up Report on the Reinstitution of Treatment," which stated:

> [F]ollowing the discontinuation of treatment in 4/13, [Plaintiff's] emotional condition declined to the point of further request for treatment. . . . [W]ith the discontinuance of treatment, [Plaintiff] reported an increase in depressive symptoms including pessimism and emptiness. She is less motivated to do the things she used to do. There were also reductions in [Plaintiff's] social functioning in that she became more emotionally withdrawn and insecure. . . . With the discontinuation of treatment, [Plaintiff] experienced an increase in her symptoms of anxiety – in her fear, uneasiness, and twitching. When she becomes frustrate[ed] and nervous, she feels tense with shaking."

(AR 575.)

In connection with that October 28, 2013 report, Dr. Curtis and Dr. Kaiser assessed Plaintiff's performance on psychological tests. (AR 576.) Plaintiff again scored in the "severe" range for both subjective depression and anxiety. (AR 576.) Dr. Curtis requested authorization to resume treating Plaintiff with psychotropic medication, cognitive behavioral therapy, and biofeedback visits. (AR 577, 578.)

**B. ALJ's Opinion**

The ALJ neither expressly adopted nor rejected Dr. Curtis' findings and opinions but determined that Plaintiff was limited to "unskilled work in a non-public habituated setting involving simple repetitive tasks." (*See generally* AR 34, 42.) With respect to Dr. Curtis' assessments, the ALJ stated the following:

> In a Comprehensive Report dated October 21, 2010, [Plaintiff] was found to be permanent and stationary with a [GAF] score of 52, indicating her symptoms caused moderate difficulty in social and occupational functioning . . . Mental status examinations consistently showed that [Plaintiff] was depressed with anxiety due to her physical complaints. The progress notes indicated no side effects or complaints with medications. [Plaintiff's] improvement was documented on October 25, 2013, indicating she has reported a reduction in depressive symptoms, she had learned to think positively, she has experienced a reduction in her symptoms of anxiety, there has been improvement in her symptoms of panic, her sleep disturbance has improved, she has fewer nightmares, she has felt less tired, and her physical complaints have been reduced. [Plaintiff] reported that the medications have helped in reducing her emotional symptoms. . . . [T]hese findings are consistent with the residual functional capacity assessed herein. There is no longitudinal evidence of

9

>reported symptoms, limitations, or pathology to require any workplace limitations related to "stress," however defined to quantified.

(AR 42.)

However, the ALJ assigned "great weight" to the opinion of the State agency mental medical consultant on reconsideration: B. Smith, M.D., whose medical specialty was not identified. (AR 42; *see also* 112-14.) Dr. Smith opined on February 21, 2013, more than two years after Dr. Curtis' Permanent and Stationary Report, that Plaintiff was moderately limited in her ability to do the following: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work setting. (AR 112-13.) Dr. Smith clarified that Plaintiff was able to maintain regular attendance and, *inter alia*, adapt to routine changes in a simple work setting that is within her physical abilities. (AR 114.)

### C. Analysis

Plaintiff contends that the ALJ rejected, without explanation, Dr. Curtis' assessment that Plaintiff is moderately limited in her activities of daily living, social functioning, concentration, persistence, pace, and adaptation. (Joint Stip. at 9.) The Commissioner contends that the ALJ's assessment that Plaintiff can perform "unskilled work in a non-public habituated setting involving simple repetitive tasks" was consistent with Dr. Curtis' opinions regarding Plaintiff's moderate mental limitations. (*Id.* at 19.) The Commissioner notes that Dr. Curtis opined in his October 21, 2010 Permanent and Stationary Report on October 21, 2010 that he "anticipated that [Plaintiff] would be able to tolerate the stresses

common to the work environment including maintaining attendance, making decisions, doing scheduling, completing tasks and interacting appropriately with supervisors and peers." (*Id.*) (quoting AR 664). At the bottom of that same paragraph, Dr. Curtis wrote "if [Plaintiff] attempt[ed] to return to a normal and a regular work situation [*i.e.*, as a companion], her condition would be expected to worsen such that there would be an increase in her level of symptoms that would correlate with a higher level of observed emotional impairment." (AR 664.)

The Commissioner further argues that *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008) is controlling because Dr. Curtis and Dr. Smith agreed that Plaintiff is moderately limited in social functioning, concentration, persistence, pace, and adaptation but only Dr. Smith assessed whether those moderate limitations precluded Plaintiff from performing unskilled work on a sustained basis. (*See* Joint Stip. at 22-23.) In *Stubbs-Danielson*, the Ninth Circuit found that the ALJ did not err when he seemingly ignored a treating physician's opinion that the plaintiff was "moderately limited in her ability to perform at a consistent pace" because the ALJ credited the opinion of a reviewing physician who had assessed the same limitation but who, unlike the treating physician, had considered whether the plaintiff could carry out simple tasks despite this deficit – and concluded that she could. *See Stubbs-Danielson*, 539 F.3d at 1171-1175. The Ninth Circuit explained: "[The treating physician] did not assess whether [the plaintiff] could perform unskilled work on a sustained basis. [The reviewing physician's] report did. [The reviewing physician's] report, which also identified 'a slow pace, both in thinking & actions' and several moderate limitations in other mental areas, ultimately concluded [the plaintiff] retained the ability to 'carry out simple tasks.'" *Stubbs-Danielson*, 539 F.3d at 1173. Thus, the Ninth Circuit held that the ALJ's exclusion of the treating physician's opinion from the RFC assessment did not "constitute a rejection of [the treating physician's] opinion" because the two opinions were consistent with each other and the ALJ "explain[ed] the omission of [the treating physician's] opinion] . . . by reference to [the reviewing physician's] assessment. *Id* at 1174, 1175.

1       The Court agrees that *Stubbs-Danielson* is controlling. Although Dr. Curtis opined that Plaintiff's moderate emotional impairments would worsen if she returned to a "normal and a regular work situation," he was contemplating her return to her previous occupation as a companion, which the VE classified as "light exertional" and "*semi*-skilled" work. (*See* AR 64) (emphasis added). Dr. Curtis expressed no opinion regarding Plaintiff's ability to perform less physically and mentally rigorous work on a sustained basis. Dr. Smith, on the other hand, did. Accordingly, Dr. Curtis and Dr. Smith's opinions are not in conflict – Dr. Smith's opinion is simply more specific – and the ALJ did not err by treating the two opinions as such. *See Stubbs-Danielson*, 539 F.3d at 1171-1175.

      Additionally, Dr. Curtis' records indicate that Plaintiff's mental impairments are the result of her physical limitations and accompanying loss of employment as a companion and would improve if she obtained employment that she was physically able to perform. (*See, e.g.*, AR 666 (suggesting Plaintiff would not have sustained any emotional impairment absent her work injury and its aftermath), AR 666 (expressing a positive prognosis that Plaintiff would be restored to the labor market but also expressing concern that if she was not able to attain any work, then her emotional impairment could worsen), AR 671 (if Plaintiff's physical pain and disability were reduced, Plaintiff could experience a corresponding improvement in her mental and emotional health).) For all of the foregoing reasons, the Court finds no error with the ALJ's assessment of Dr. Curtis' findings and opinions.

\\
\\
\\
\\
\\
\\
\\

### III. ALJ Failed To Properly Evaluate And Incorporate The Opinion Of Dr. Scheinberg.

**A. Findings And Opinions Of Dr. Scheinberg**

On March 23, 2010, in connection with her workers' compensation claim, Plaintiff was evaluated by Dr. Scheinberg, an orthopedic surgeon. (AR 538-41.) The record shows that she received routine treatment from Dr. Scheinberg, including a February 11, 2011 right lumbar decompression surgery and hemilaminotemy at L5-S1 (AR 507-08), for more than three years after that initial evaluation date (*see generally* AR 450-541, 605-634 (treatment notes for the period between 3/23/10 and 1/8/14)).

On May 7, 2013, after three years of regular treatment, Dr. Scheinberg wrote a permanent and stationary report ("Permanent and Stationary Report"), in which he opined that Plaintiff continues to have "significant symptoms of severe low back pain with radicular pain" resulting from three posterior disc protrusions, an annular tear related to the posterior aspect of the disc protrusion at L5-S1, encroachment on the foraminal exiting nerve roots bilaterally, and arthritic changes in the facet joints bilaterally. (AR 623.) He reported that Plaintiff also experiences neck pain, bilateral hand pain, and right shoulder pain resulting from minimal osteoarthritic changes. (AR 623.) Dr. Scheinberg opined that Plaintiff had reached her maximum medical improvement and assessed a series of functional restrictions (AR 625), which he updated with a June 3, 2013 Supplemental Report (AR 553-54). According to those reports, Dr. Scheinberg opined that Plaintiff should avoid the following activities: lifting in excess of 20 pounds; lifting 20 pounds more than 2 to 3 times per day; lifting 10 pounds more frequently than one time per hour; repetitive bending; repetitive stooping; repetitive at or above shoulder level activities with her right upper extremity; squatting; and kneeling. (AR 553, 625.) Dr. Scheinberg also adopted Plaintiff's report to her lawyer that she can: look down for only 10 minutes at a time; sit for no more than 10

minutes at a time; stand for no more than 20 minutes at a time; and walk for no more than 20 minutes at a time. (AR 553.)

### B. ALJ's Opinion

The ALJ adopted portions of Dr. Scheinberg's 2013 opinions while rejecting others. Specifically, the ALJ found that Plaintiff could perform light work – that is, lift 20 pounds at a time "with frequent lifting or carrying of objects weighing up to 10 pounds" and perform "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls" – but could only occasionally reach at or above the shoulder with her right arm and could not kneel or squat. (AR 34); *see also* S.S.R. 83-10 (defining "light work"). The ALJ explained that he assigned Dr. Scheinberg's assessment of Plaintiff's functional limitations "some weight," adopting the functional restrictions that were "best supported by the objective evidence and the record as a whole" while giving "no weight" to the functional restrictions that Dr. Scheinberg based "quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff], without objective support." (AR 41.)

The ALJ cited the following reasons for rejecting a portion of Dr. Scheinberg's 2013 opinions: (1) Plaintiff reported throughout the record that her medications help and denied side effects; (2) Plaintiff reported that her medications allow her to adequately perform her activities of daily living; (3) portions of Dr. Scheinberg's opinion are not supported by sustained reports of symptoms or objective pathology of record; (4) in December 2013, Dr. Scheinberg recommended that Plaintiff obtain a gym membership and "6 sessions with a certified trainer" (*see also* AR 610); and (5) in January 2014, Plaintiff reported that her medication "facilitates maintenance of ADLs including very light household duties, shopping for groceries, preparing food, bathing, grooming" and that Plaintiff "indicates

14

ability to exercise and entertain healthy activity level with current medication on board" (*see* AR 605). (AR 41.)

Instead of giving Dr. Scheinberg's opinion controlling weight, the ALJ gave "great weight" to the opinion of the reviewing state agency physician, Dr. G. Bugg. (AR 42.) On February 19, 2013, three months before Dr. Scheinberg wrote his Permanent and Stationary Report, Dr. Bugg opined that Plaintiff could: occasionally lift 20 pounds; frequently carry 10 pounds; stand and/or walk about 6 hours in an 8 hour workday; engage in unlimited pushing and/or pulling; and frequently kneel, stoop (bend at the waist), crouch (bend at the knees), and crawl. (AR 112.)

**C. Analysis**

The Commissioner contends that the ALJ did not err in assigning greater weight to the opinion of the reviewing state agency physician, Dr. Bugg, than to Plaintiff's treating physician of over three years, Dr. Scheinberg, because "the only portion of [Dr. Scheinberg's] opinion that the ALJ rejected was a two paragraph supplemental report that, essentially, endorsed a list of Plaintiff's subjective complaints." (Joint Stip. at 24.) The Court disagrees with the Commissioner's characterization of the portion of Dr. Scheinberg's opinion that the ALJ rejected.

Admittedly, the first paragraph of Dr. Scheinberg's June 3, 2013 Supplemental Report assessed functional limitations that were based primarily, if not entirely, on Plaintiff's subjective complaints to her lawyer, complaints that the ALJ subsequently found were not credible. (*See* AR 553.) However, in the second paragraph of that report, Dr. Scheinberg clarified, without reference to Plaintiff's subjective complaints, what he meant when he opined in his May 7, 2013 Permanent and Stationary Report that Plaintiff could lift no more than 20 pounds. (*See id.*) Dr. Scheinberg explained that while Plaintiff is able to lift 20

15

pounds, she can do so no more than three times per day, and that while Plaintiff is able to lift 10 pounds, she can do so no more than one time per hour. (*Id.*) The ALJ failed to adequately address this portion of Dr. Scheinberg's 2013 opinions.

In determining that Plaintiff retained the residual functional capacity to perform light work, the ALJ determined that Plaintiff could "frequently" lift or carry objects weighing up to 10 pounds. *See* S.S.R. 83-10 (defining "light work"); (*see also* AR 34). The Commissioner defines "frequent" as "occurring from one-third to two-thirds of the time." S.S.R. 83-10. Accordingly, contrary to Dr. Scheinberg's opinion that Plaintiff could lift 10 pound objects "no more than one time per hour," the ALJ determined that Plaintiff could spend up to two-thirds of her workday engaged in lifting 10 pound objects. The ALJ's determination cannot be reconciled with Dr. Scheinberg's opinion. *Cf. Nguyen v. Colvin*, No. SA CV 12-1837-PJW, 2013 WL 6536732, at *1 (C.D. Cal. Dec. 12, 2013) (plaintiff cannot perform work that requires her to grip, grasp, and torque up to two-thirds of the day if she is only capable of performing those actions one-half of the day).

Further, the ALJ's reasons for rejecting a portion of Dr. Scheinberg's opinions are not legitimate reasons for discounting Dr. Scheinberg's assessment that Plaintiff can lift 10 pounds no more than "one time per hour," because: this assessment was based on Dr. Scheinberg's extensive treatment relationship with Plaintiff, not her subjective complaints to her lawyer; a claimant need not be able to spend two-thirds of her day engaged in lifting 10 pound items in order to perform Plaintiff's reported activities of daily living, *i.e.*, bathing, grooming, preparing simple meals like beans and sandwiches, light grocery shopping, and performing very light housework; and a doctor could advise his patient that, despite – or, perhaps, *due* to – her inability to spend two-thirds of her day lifting 10 pound items, she would benefit from working with a personal trainer at a gym. Thus, the ALJ failed to articulate legitimate reasons supported by the record for discounting Dr. Scheinberg's opinion that Plaintiff can lift 10 pounds no more than one time per hour.

1         The Court considered whether the ALJ's error is harmless in light of the ALJ's determination that Plaintiff can perform only occasional reaching at or above the shoulder on the right and the VE's testimony that the agricultural sorter occupation does not entail "reaching above the shoulder." (*See* AR 67.) However, both the Commissioner and the Merriam Webster Dictionary define "reaching" and "lifting" as distinct activities, thereby precluding the Court from construing the ALJ's limitation on "reaching" to encompass Dr. Scheinberg's limitation on "lifting." *See* MERRIAM-WEBSTER DICTIONARY, *available at* https://www.merriam-webster.com (last visited Dec. 14, 2016) (defining "lift" as "to raise from a lower to a higher position" and "reach" as "to stretch out"); POMS § DI 25001.001 (defining "lifting" as "raising or lowering an object from one level to another" and "reaching" as "extending the hands and arms in any direction"); *see also Casiano v. Colvin*, No. 215CV01708TSZDWC, 2016 WL 4487718, at *5 (W.D. Wash. July 26, 2016), report and recommendation adopted, No. C15-1708-TSZ, 2016 WL 4479983 (W.D. Wash. Aug. 25, 2016) ("'reaching" is an activity distinct from lifting"). Further, the VE was not asked about the extent to which an agricultural sorter would engage in lifting 10 pound objects. (*See generally* AR 63-68.) For these reasons, the ALJ's error is not "inconsequential to the ultimate nondisability determination," and the Court cannot reasonably discern the agency's path without additional fact-finding by the ALJ. *See Brown-Hunter*, 806 F.3d at 492. Therefore, the matter must be remanded for further proceedings consistent with this Order. *See id.*

\\
\\
\\
\\
\\
\\
\\
\\

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: December 15, 2016

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE